Bernard C. Hasson and Helen Hasson v. Commissioner.
Hasson v. Commissioner
Docket No. 49325.
United States Tax Court
T.C. Memo 1955-121; 1955 Tax Ct. Memo LEXIS 218; 14 T.C.M. (CCH) 443; T.C.M. (RIA) 55121; May 16, 1955
*218 Held, deficiencies determined on the basis of a net worth computation are sustained, with adjustments for certain errors in the computation. Willis S. Siferd, Esq., Cook Tower, Lima, Ohio, for the petitioners. Alvin J. Ivers, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in tax and penalties determined against petitioners as follows: Additions to tax
Sec.
Sec.
Year
Income tax
293(a)
294(d)
1949
$1,639.86
$ 81.99
$261.36
1950
1,660.96
83.05
259.57
1951
2,010.10
100.51
357.24
The issues to be decided are: (1) whether petitioners had unreported income for the taxable years 1949, 1950, and 1951, as determined by respondent by the net worth and expenditures method, (2) whether part of any *219 deficiencies for such years is due to negligence or an intentional disregard of the applicable rules and regulations by petitioners, requiring the imposition of the 5 per cent penalty under section 293(a) of the 1939 Code; and (3) whether petitioners are liable for the additions to tax provided for by section 294 because of the failure to file declarations of estimated tax and the substantial underestimation of estimated tax. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Bernard C. Hasson (hereinafter referred to as petitioner) and Helen Hasson are husband and wife, residing in Lima, Ohio. They filed joint Federal income tax returns for the years here in issue, 1949, 1950, and 1951, with the collector of internal revenue at Toledo, Ohio. Petitioner left high school in 1934 at the age of 17, and was initially employed as a gasoline service station attendant. In 1935 he went to work for one Weaver Haus, who operated coin machines such as pinball machines, slot machines, and jukeboxes. His starting wage was approximately $20 per week with free room and board. In a year's time his salary rose *220 to $70 per week plus semiannual bonuses. Haus died in October 1936, and the business was subsequently operated by his widow for a period. In 1937, petitioner, his brother Raymond Hasson, and two other individuals operated the business; but by the end of 1938, petitioner and the two other individuals had left and it was thereafter conducted solely by Raymond Hasson. The record does not show that petitioner retained any proprietary interest in this business. Petitioner did not report, on his Federal income tax returns, the sale of an interest in this business to his brother. Petitioner was employed by Westinghouse from 1938 to 1942. His starting wage was $.74 per hour, but after about 2 months, his earnings approximated $275 to $375 per month. Petitioner was married in 1938. He and his wife separated after a year or two and they were divorced in 1942. After the separation, he lived at home with his parents. Petitioner was inducted into the Army in March 1943, and was honorably discharged for medical reasons in the latter part of the same year. In 1944, petitioner obtained employment at the Elks Lodge in Lima, Ohio, as assistant steward or bartender at a salary of $70 per week. *221 He was made assistant manager in 1947. His wages rose gradually during the period of his employment at the Elks Lodge from approximately $3,500 for each of the years 1944 and 1945 to the sum of $6,378.48 for the year 1949, $6,155.89 for the year 1950, and $5,675.30 for the first 11 months of 1951. While employed at the Elks Lodge, petitioner lived with his parents until his second marriage in January 1946, to Helen Hasson, also a petitioner herein. In preparation for his marriage, petitioner purchased a duplex residence in Lima, Ohio, late in 1945. The purchase price was $8,750, including 4 rooms of furniture, and was financed almost entirely by a mortgage. Petitioner saved money from his various jobs and by December 31, 1945, he had accumulated certain cash savings which were not deposited in any bank. During the course of an examination by a revenue agent in 1952, petitioner stated that his cash hoard at January 1, 1946, amounted to approximately $3,500; he later revised this amount to $5,000. In each of the years 1946, 1947, and 1948, petitioners expended approximately $1,000 more than the cash receipts reported on their returns. Such reported cash receipts consisted of salary *222 in the amounts of $3,500.00, $3,701.25, and $4,732.66, for the years 1946, 1947, and 1948, respectively, plus approximately $400 in rents from their duplex during each of these years. During 1947 and 1948, petitioner made 2 personal loans from a local bank in the amounts of $710.25 and $574.89. Petitioners reported as their net income for the years 1949, 1950, and 1951, the respective amounts of $5,744.40, $5,335.31, and $6,614.58. Respondent determined that petitioners' returns and records did not reflect their entire income and, by the net worth method, he determined that petitioners had failed to report income in the amount of $8,324.33 for each of such years. Two children were born to petitioners, one in 1946 and the other in 1947. Petitioners' living expenses were $2,500 during each of the years in issue. In addition, in 1950 they purchased a new $4,600 automobile and a television set for $503. Petitioner spent $150 to $200 for a vacation trip to Florida in 1950. They acquired an additional amount of cash in that year as the result of an insurance settlement for tornado damage to their home. The insurance proceeds amounted to $4,114.04, of which $1,693.74 was spent for repairs, *223 leaving them a net balance of $2,420.30. In 1951 petitioners purchased a new $18,000 home in Lima, Ohio. They also spent $2,250 in that year for furniture and appliances for this new home. In December 1951, petitioner left his employment with the Elks Lodge and purchased an interest in the Continental Bar in Lima. Respondent determined, as part of his net worth computation, that petitioner's capital account in this business amounted to $14,304.53 at December 31, 1951. In addition to the $5,675.30 salary which he received from the Elks Lodge in 1951, petitioner reported on the return filed for that year his distributive share of profits from the operation of the Continental Bar, amounting to $804.53. Also reported was the sum of $900, received by petitioner as a fee for the administration of the estate of his brother, Raymond Hasson. Petitioners did not report the receipt of $240 interest in 1951 on a $3,000 loan made to one Herbert Arps in 1950 (repaid in 1951), nor did they report the receipt of $88 interest in that same year from Raymond Hasson on a one-year note for $1,200, dated October 18, 1950. Petitioner borrowed $3,000 from his mother in 1951 and gave her a note for *224 such sum, dated November 14, 1951. Petitioners also obtained $1,000 in 1951 from the sale of certain items of furniture from their old home. Petitioners received no substantial gifts or inheritances during the taxable years 1949, 1950, and 1951. Petitioners filed no declarations of estimated tax for the taxable years 1949, 1950, and 1951. The following net worth computation is a condensation of that used by respondent in his determination of the deficiencies herein, but it has been adjusted to bring it into accord with our findings of fact and to take into account certain concessions by respondent: 12/31/48
12/31/49
12/31/50
12/31/51
ASSETS
Cash in Bank
$ 2.34
$ 2.34
$ 3,191.05
$ 2,114.50
Note Receivable - Raymond Hasson
1,200.00
Residence & Furniture - 943 Richie Ave.
8,750.00
8,750.00
6,329.70
5,329.70
Improvements - 943 Richie Ave.
2,218.53
3,212.66
4,103.34
4,324.27
Automobiles
3,404.82
3,404.82
4,600.00
4,600.00
Household Furniture
0
0
503.00
2,753.00
Capital Account, Continental Bar
0
0
0
14,304.53
Residence - Lost Creek
0
0
0
18,000.00
Note Receivable - Herbert Arps
0
0
3,000.00
Total Assets
$14,375.69
$15,369.82
$22,927.09
$51,426.00
LIABILITIES
Mortgages Payable
$ 7,654.30
$ 7,197.56
$ 6,722.55
$15,915.07
Note Payable - Anna Hasson
0
0
0
3,000.00
Total Liabilities
$ 7,654.30
$ 7,197.56
$ 6,722.55
$18,915.07
NET WORTH
6,721.39
8,172.26
16,204.54
32,510.93
6,721.39
8,172.26
16,204.54
Increase in Net Worth
$ 1,450.87
$ 8,032.28
$16,306.39
Adjustments
Add: Income Tax Withheld
561.70
549.50
641.21
Personal Expenses re residence
195.10
183.49
Attorney fee re auto wreck
150.00
Estimated Living Expenses
2,500.00
2,500.00
2,500.00
$ 4,707.67
$11,265.27
$19,597.60
Less: Depreciation, rental property
208.09
237.06
471.56
Profit on auto trade
95.18
Refund, prior year's income tax
24.90
6.52
38.76
Insurance re personal injury
477.78
Reconstructed Adjusted Gross Income
$ 4,474.68
$10,926.51
$18,609.50
Total Reconstructed Adjusted Gross Income for 1949, 1950 and 1951
$34,010.69
Total Reported Adjusted Gross Income for 1949, 1950, and 1951
19,660.32
Total Unreported Income for 1949, 1950, and 1951
$14,350.37
Additional Income Allocated Equally to Each of the Taxable Years 1949,
1950, and 1951
$ 4,783.46
*225 Opinion RICE, Judge: Respondent determined, on the basis of a net worth computation, that petitioners had failed to report a total of $24,973.01 in income during the years 1949, 1950, and 1951. Petitioners contend that respondent's failure to show the source of such disputed income precludes the use of the net worth and expenditures method of reconstructing income; and, in any event, that if certain errors in respondent's net worth computation were corrected, the computation would show that petitioners had correctly reported their income during the years in question. It is well settled that, under section 41 of the 1939 Code, the Commissioner may determine deficiencies in the income of a salaried individual on the basis of a net worth computation. The increase in net worth determined by such computation is evidence of income derived by the taxpayer during the period in which the increase occurs. , affd. - Fed. (2d) - (C.A. 4, April 12, 1955). Deficiencies so determined are presumptively correct and, where there are no books or records which accurately reflect the amounts of the unreported income, the burden of proof rests on the *226 taxpayer to show that the net worth computation is erroneous. Lacking the cooperation of the taxpayer, it may be impossible for the Commissioner to ascertain the source of the unreported income so determined, but the showing of such source is not an essential prerequisite for sustaining a deficiency determined under the provisions of section 41. (C.A. 3, 1952), certiorari denied ; , affd. (C.A. 3, 1941). A taxpayer cannot shift the burden of proof merely by his ability to conceal the origin of his unreported income. We have given careful consideration to each of the various items in respondent's net worth computation which are in dispute. Unfortunately, as is so frequently true in net worth cases, there is a paucity of documentary evidence in the record, and petitioner attempts to meet his burden of proof by reliance on his own self-serving testimony and the not disinterested testimony of his mother. Much as we dislike to decide issues on the burden of proof, the evidence was not sufficiently convincing to support findings *227 of fact that petitioner possessed various assets at the beginning of the net worth period for which he was not given credit in respondent's computation. We have incorporated into our findings of fact an adjusted net worth computation which takes into account certain items which we have found in petitioners' favor but, nevertheless, it discloses a total unreported income for the 3 years in issue, amounting to $14,350.37. Petitioner contends that he had accumulated cash approximating $9,000 to $10,000 by December 31, 1948, such cash allegedly being kept at various times in his home, in a strong box in his mother's home, and in the safe at the Elks Lodge. However, petitioner's testimony on this matter was vague and conflicting. He claims to have amassed this sum by January 1, 1946, and yet he stated, during an examination by a revenue agent, that the amount of accumulated cash at this date approximated but $3,500, and subsequently revised this figure to $5,000. Petitioner's history of employment and earnings, the purchase of a home in 1945 financed almost entirely by a mortgage, and the financing of moderately small purchases in 1947 and 1948 by personal loans convinces us that he did *228 not possess a cash hoard of $9,000 to $10,000 during the years 1946 through 1948. Petitioners' witnesses testified that he kept certain envelopes in the safe at the Elks Lodge and it is quite possible that he did have accumulated cash on hand aggregating $3,500 on January 1, 1946, as he first stated to the revenue agent. But it appears that this amount was spent during the following three years and we are unable to find as a fact that he had any undeposited sum of cash on hand on December 31, 1948. Accordingly, no adjustment can be made in respondent's net worth computation with respect to this item. Petitioner also contends that part of the increase in his various assets during the net worth period was derived from the repayment of a debt owed him by his brother prior to the beginning of the period rather than from taxable income earned during the period. This debt allegedly consisted of a loan by petitioner to his brother in 1941, amounting to $1,200 plus the sum of $4,400 owed petitioner in payment for the sale of his alleged proprietary interest in the coin machine business conducted by his brother. However, the evidence indicates that the $1,200 loan was made in 1950, and we *229 have so found. As for the purported sale by petitioner of an interest in the coin machine business, the record does not substantiate the possession of such an interest. It does not appear that petitioner reported any income from this business on his various income tax returns nor did he report the realization of gain on the sale of such interest in 1946 on his return for that year. Without documents of sale, cancelled checks or some other evidence indicating possession and sale of an interest in this coin machine business, we must hold that respondent did not err in failing to include this $4,400 item among petitioner's assets at December 31, 1948. We have found that petitioner borrowed the sum of $3,000 from his mother in 1951 and have adjusted respondent's net worth computation to take this into account. It also appears that respondent's estimate of petitioner's living expenses is excessive and we have made a finding of fact that such expenses approximated $2,500 annually during the years in issue. Respondent's computation also errs in failing to give petitioners credit for the receipt of $1,000 in 1951 from the sale of certain items of furniture and in overstating the amount expended *230 by petitioners in repairing tornado damage to their old home. Taking these various adjustments and certain concessions into account, the adjusted net worth computation results in a finding that petitioners failed to report income amounting to $14,350.37 during the years 1949, 1950, and 1951. Petitioners do not contest respondent's proration of the total amount of unreported income equally over the years in issue. Lacking more precise evidence as to when such income was actually earned, such method must be sustained. . Petitioners have offered no evidence and made no argument on brief with respect to the imposition of the 5 per cent negligence penalty under section 293(a) and the additions to tax under section 294(d) for failure to file declarations of estimated tax and substantial understimation of estimated tax. Consequently, we deem the issues raised with respect to these items to have been conceded. Decision will be entered under Rule 50.